# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

ALBERT BEAVER,

          Plaintiff,

    v.                                          Case No. 08-C-187

MICHAEL MELOTTE II, MELISSA MELOTTE,
and MARY BERNE,

          Defendant.

---

## DECISION AND ORDER

Plaintiff Albert Beaver, *pro se*, brought this action alleging several claims, all of which were based on his relationship with an adult daughter who resided at an adult care facility operated by Defendants Michael and Melissa Melotte. In a sanctions hearing on June 6, I indicated that almost all of the claims had no merit, and so the Defendants' motions to dismiss were granted in most respects. The possible exception was the Plaintiff's retaliation claim, the only claim I concluded he might have standing to bring on his own behalf. In the hearing, a briefing schedule for that claim was set, and the retaliation claim is now fully briefed.

By way of brief background, Beaver, who was formerly the guardian of his adult daughter, has alleged repeatedly that his adult daughter's care has been inadequate. According to him, he observed conditions of her custody that he found lacking, and he reported certain alleged violations of fire codes to the Fire Department. He also reported what he alleges was patient abuse (*e.g.*, locking a resident in his room for an afternoon) to the director of quality assurance at the Wisconsin

Department of Health and Family Services.[1]  Soon after that report, he was phoned by Defendant Michael Melotte and told that the wheels were in motion to have Plaintiff's visitation rights revoked.  This, Beaver asserts, was retaliation in violation of § 503 of the Americans with Disabilities Act ("ADA").

The ADA precludes retaliation against anyone who opposes practices made unlawful by the statute.  "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).  Beaver argues that in complaining to relevant authorities, he was attempting to alert them to violations of the ADA's requirement that qualified individuals with disabilities may not, by reason of their disability, be denied benefits or excluded from participation in activities by any public entity.  42 U.S.C. § 12132.  Yet the mere fact that the subject matter of Beaver's complaint involved a disabled person does not mean that he was engaged in activity protected by the ADA.  Beaver was not retaliated against for opposing any acts made unlawful by the ADA, nor was he participating in any investigation under the ADA.  He merely alerted authorities to fire code violations and what he alleged was mistreatment of one or more individuals who happened to be disabled.  Even accepting his allegations as true, the mistreatment of disabled individuals does not mean those individuals were discriminated against or denied benefits "by reason of" their disability, and that is what the statute protects.  42 U.S.C. § 12132.

_____

[1]His own proposed findings of fact suggest the patient was relegated to his room after yelling at other patients.

Suppose that instead of a home for the disabled we were dealing with conditions at a women's prison. If the allegation was that certain female inmates were being mistreated, no one would conclude that they were being discriminated against on the basis of their gender – the alleged victims were not treated worse than men. Similarly, the fact that residents of a home for the disabled are allegedly mistreated does not mean that such treatment is "by reason of" their disability.[2] Otherwise, any tort committed in a facility for a specifically protected group would be turned into a discrimination case. The ADA does not protect against every injury suffered by disabled persons – it merely guards against injuries they suffer *because* they are disabled.[3] Of that, there is no evidence here.

There are a number of other motions and filings pending, but none of them speak to the central issue discussed above. Beaver has complained that the Court has favored the Defendants' motions for summary judgment over his own motion. That is not true: the key issue is the same, namely, whether the facts – as Beaver himself has alleged them – allow recovery for retaliation in violation of the ADA. It was not incumbent on the Defendants to produce their own evidence or

_____

[2]The Court has emphasized, on the record, that it does not discount either the Plaintiff's motivation or the seriousness of the charges he alleges. Beaver's proposed findings of fact describe unfortunate living conditions experienced by individuals at the adult care home.

[3]The parties spend a lot of effort discussing whether the adult care home is a public entity. It seems clear that it isn't. Still, the home is very likely a place of public accommodation, and Title III of the ADA prohibits discrimination against the disabled by owners or operators of public accommodations. 42 U.S.C. § 12182(a). Thus, if Beaver was opposing violations of Title III, his retaliation claim would otherwise state a claim. *McInerney v. Rensselaer Polytechnic Institute,* 505 F.3d 135, 139 (2d Cir. 2007) (noting that Title V retaliation claims may be "predicated on asserting one's rights under Title III.")

3

counter Beaver's factual assertions – they are (for purposes of the motion) *admitting* that his version of events is true. Accordingly, Beaver's motion to vacate (Dkt. # 69) and motion for leave to file a sur-reply brief (Dkt. # 64) are **DENIED**. Similarly, his various motions to strike (Dkt. # 32, 36, 46, 50) are also **DENIED**, as is his amended cross-motion for summary judgment (Dkt. # 61). The motion to intervene (Dkt. # 28) is **DENIED** as moot. The Defendants' motions to dismiss (Dkt. # 22, 30) are **GRANTED**, and their motions for summary judgment (Dkt. # 38, 41, 56) are also **GRANTED**.

That leaves the matter of sanctions. On the one hand, as I have indicated several times already, the allegations Beaver raises are serious ones, and it is difficult to doubt that he believes he is acting in his daughter's best interests by pursuing this case. On the other hand, Beaver is a trained attorney who has not been shy about using the state and federal judicial systems to exert leverage over those who oppose him. In all of these actions, he has been able to act *pro se*, while his opponents are forced to hire lawyers to defend his claims, many of which are completely baseless. (*E.g.*, "This action arises under the United States Constitution, Amendment 8 . . ." and his daughter's treatment in a non-state, non-punitive facility amounts to "cruel and unusual punishment.") (Am. Compl., ¶¶ 1, 23.) In this case in particular, the principal assertion seems to be that the Defendants have violated various state laws and regulations, and the involvement of federal law (much less the United States Constitution) is tangential, at best.

That said, the sanctions to be imposed under Rule 11 must be limited to those that "suffice[] to deter repetition of the conduct." Fed. R. Civ. P. 11(c)(4). Although I am satisfied that a monetary sanction would not exceed the bounds of that guidance, I conclude that a nonmonetary sanction will suffice to deter Beaver from similar actions in the future. The sanction comes in the

4

form of a warning that any future action filed in this court involving baseless claims will be subject to swift monetary sanction. This court – and presumably state courts – will not continue to entertain groundless actions by the Plaintiff. The filing of a federal lawsuit is serious business, and Beaver is cautioned to take special care before filing a lawsuit and requiring others to answer his allegations.

The motions are decided as set forth above, and the case is **DISMISSED**.

**SO ORDERED** this ___15th___ day of October, 2008.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

5